1  JOSEPH P. RUSSONIELLO, CSBN 44332
   United States Attorney
2  JOANN M. SWANSON, CSBN 88143
   Chief, Civil Division
3  EDWARD A. OLSEN, CSBN 214150
   Assistant United States Attorney
4
5     450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102
      Telephone: (415) 436-6915
6     FAX: (415) 436-6927

7  Attorneys for Defendants

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                        SAN FRANCISCO DIVISION
11
   SURABI MENON,                        )
12                                       )  No. C 08-0207 JSW
                    Plaintiff,           )
13                                       )
             v.                          )  **DEFENDANTS' NOTICE OF MOTION**
14                                       )  **AND MOTION TO DISMISS**
   MICHAEL CHERTOFF, Secretary of the    )
15 Department of Homeland Security (DHS); )  Date:  June 6, 2008
   EMILIO T. GONZALEZ, Director of the   )  Time:  9:00 a.m.
16 U.S. Citizenship and Immigration Service, )
   (USCIS);                              )
17 DONALD NEUFELD, Director of California )
   Service Center of USCIS;              )
18 ROBERT S. MUELLER, III, Director of   )
   Federal Bureau of Investigation (FBI), )
19                                       )
                    Defendants.          )
20 _____    )

21
        **PLEASE TAKE NOTICE** that on June 6, 2008, at 9:00 a.m., or as soon thereafter as the
22
   parties may be heard, the defendants will bring for hearing a motion to dismiss this action for lack
23
   of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil
24
   Procedure 12(b)(1) and 12(b)(6).  The hearing will take place before the Honorable Jeffrey S.
25
   White, in Courtroom 2, 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102.
26
        This Motion is based on the discussion contained in the motion, pleadings, papers and files in
27
   this action, the declaration of Janaki Rangaswamy and such oral argument as may be presented at
28

   MOTION TO DISMISS
   C08-0207 JSW

1  the hearing on the motion.

2

3  Dated: March 14, 2008                    Respectfully submitted,

4                                           JOSEPH P. RUSSONIELLO
                                            United States Attorney
5

6                                                    /s/
7                                           EDWARD A. OLSEN
                                            Assistant United States Attorney
8                                           Attorneys for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
C08-0207 JSW

## I.    INTRODUCTION

The plaintiff, Surabi Menon, is a lawful permanent resident of the United States who filed an application for naturalization with the United States Citizenship and Immigration Services ("USCIS") on June 20, 2006.  The USCIS has not yet adjudicated her naturalization application because the FBI has not yet completed a mandatory name check of the plaintiff.  On January 11, 2008, the plaintiff filed this action seeking an order directing USCIS to adjudicate her naturalization application.  The defendants ask this Court to dismiss the plaintiff's action for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted.

## II.    FACTUAL BACKGROUND

Plaintiff is a lawful permanent resident of the United States.  Complaint ¶ 2.  On June 20, 2006, she filed an application for naturalization with USCIS.  Declaration of Janaki Rangaswamy ¶ 17.  As part of its processing of the plaintiff's naturalization application, the USCIS asked the FBI to conduct a mandatory name check of the plaintiff on June 20, 2006.  *Id.* To date, the FBI has not yet completed the plaintiff's name check.  Declaration of Michael Cannon ¶ 41.  In light of the fact that the FBI has not yet completed the plaintiff's name check, USCIS has not scheduled an interview of the plaintiff on her naturalization application.  Rangaswamy Declaration ¶ 18; 8 C.F.R. § 335.2(b) ("The Service will notify applicants for naturalization to appear before a Service officer <u>only after</u> the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.") (emphasis added).

The plaintiff filed this action on January 11, 2008, asking this Court to direct USICS to adjudicate her naturalization application within a reasonable period of time.  Complaint ¶ 30.

## III.    LEGAL BACKGROUND

A. <u>LEGAL STANDARD APPLICABLE TO THIS MOTION</u>

When a defendant moves to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim.  See Thornhill Publ'n Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  A motion to dismiss for failure to state a claim under Fed. R. Civ. P 12(b)(6) may

1  be granted when the plaintiff fails to set forth a "cognizable legal theory" or fails to provide

2  "sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901

3  F.2d 696, 699 (9th Cir. 1990).

4  B.  NATURALIZATION

5      With the enactment of the Immigration Act of 1990, the federal courts were stripped of their

6  exclusive jurisdiction to entertain applications for naturalization.  Immigration Act of 1990, Pub.

7  L. No. 101-649, § 4011, 1204 Stat. 4978 (November 29, 1990).  Now, the Secretary of the

8  Department of Homeland Security has "sole authority to naturalize persons as citizens of the

9  United States."  8 U.S.C. § 1421(a).  "Before a person may be naturalized, and employee of the

10 Service, or of the United States designated by the Attorney General,[1] shall conduct a personal

11 investigation of the person applying for naturalization . . . . "  8 U.S.C. § 1446(a); see also 8

12 C.F.R. § 335.1 ("Subsequent to the filing of an application for naturalization, the Service shall

13 conduct an investigation of the applicant.  The investigation shall consist, at a minimum, of a

14 review of all pertinent records.").

15     Before a decision is rendered on an alien's application to naturalize, USCIS, in conjunction

16 with the FBI, conducts several forms of security and background checks to ensure that the alien is

17 eligible for the benefit sought and that she is not a risk to national security or public safety.  See

18 Rangaswamy Declaration ¶ 3.  These checks currently include: (1) an FBI name check, which is

19 run against FBI investigative databases compiled by law enforcement agencies including

20 administrative, applicant, criminal, personnel and other files; (2) an FBI fingerprint check, which

21 provides information relating to criminal background within the United States; and (3) a check

22 against the Interagency Border Inspection System ("IBIS"), which contains records and

23 information from more than 20 federal law enforcement and intelligence agencies, and is used to

24 compile information regarding national security risks, public safety concerns, and other law

25

26     [1]On March 1, 2003, the Department of Homeland Security and its United States
    Citizenship and Immigration Services assumed responsibility for adjudication of naturalization
27  applications.  6 U.S.C. § 271(b).  Accordingly, the discretion formerly vested in the Attorney
    General is now vested in the Secretary of Homeland Security.  6 U.S.C. § 551(d).
28

enforcement concerns.  <u>See</u> Rangaswamy Declaration ¶ 3.

Congress has mandated that the agency withhold adjudication until the necessary background

checks are complete:

> [D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds
> appropriated or otherwise made available to the Immigration and
> Naturalization Service shall be used to complete adjudication of an application
> for naturalization unless the Immigration and Naturalization Service has
> received confirmation from the Federal Bureau of Investigation that a full
> criminal background check has been completed . . . .

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations

Act of 1998 ("Appropriations Act of 1998"), Pub. L. 105-119, 111 Stat. 2440, 2448-49;

Rangaswamy Declaration at ¶ 4.

If USCIS has failed to make a determination on an application for naturalization within 120

days of the applicant's examination, the applicant may ask the District Court for a hearing on his

or her naturalization application under 8 U.S.C. § 1447(b).  Here, the plaintiff has not yet been

examined on her naturalization application.  Accordingly, 8 U.S.C. § 1447(b) has no application to

this case.

C.  <u>THE FBI NAME CHECK</u>

The FBI's National Name Check Program's mission is to disseminate information from the

FBI's Central Records System (CRS) in response to requests from federal agencies such as USCIS.

Declaration of Michael Cannon ¶ 4.  The CRS contains the FBI's administrative, personnel and

investigative files.  *Id.* ¶ 5.  When the FBI searches a person's name, the name is electronically

checked against the FBI's Universal Index.  Cannon Declaration ¶ 11.  The searches seek all

instances of the individual's name, social security number, and dates close to his or her date of

birth, whether a main file or reference file.  *Id.*  The names are searched in a multitude of

combinations, switching the order of first, last and middle names, and so on.  *Id.*  If there is a

match with a name in a FBI record, it is designated as a "Hit," meaning that the system has stopped

on a possible match with the name being checked.  Cannon Declaration ¶ 12.  If a search comes up

with a match to a name and either a birth date or security number, it is designated an "Ident."  *Id.*

There are four stages involved in the completion of an individual name check: batch

1   processing, name searching, file review, and dissemination. Cannon Declaration ¶ 13. The first

2   stage in the process, batch processing, involves the transfer of the name check requests from

3   USCIS to the Name Check Programs on magnetic tapes. *Id*. The tapes are uploaded into an FBI

4   system and the names are electronically checked against the FBI's Universal Index (UNI).

5   Historically, during the batch processing stage, approximately 68 percent of name checks

6   submitted by USCIS are electronically checked and returned to USCIS as having "No Record"

7   within 48-72 hours. Cannon Declaration ¶ 13. A "No Record" indicates that the FBI's Universal

8   Index database contains no identifiable information regarding a particular individual. *Id*.

9       The second stage in the process is name searching. Cannon Declaration ¶ 14. For the name

10  check requests that are still pending after the initial electronic check, additional review is required.

11  *Id*. An FBI employee in the Name Check Program physically enters the applicant's name into the

12  computer database searching different fields and information. *Id*. A secondary manual name

13  search completed typically within 30-60 days historically identifies an additional 22 percent of the

14  USCIS requests as having "No Record," for a 90 percent overall "No Record" response rate. *Id*.

15  The results of this 22 percent also are returned to USCIS. *Id*.

16      The third and fourth stages in the process are file review and dissemination. Cannon

17  Declaration ¶ 15. The remaining 10 percent are identified as possibly being the subject of an FBI

18  record. *Id*. At that point, the FBI record must be retrieved and reviewed. *Id*. If the record was

19  electronically uploaded in the FBI;s electronic record-keeping system, it can be reviewed quickly.

20  *Id*. If not, however, the relevant information must be retrieved from an existing paper record. *Id*.

21  Review of this information will determine whether the information is identified with the request.

22  *Id*. If the information is not identified with the request, the request is closed as a "No Record" and

23  USCIS is so notified. *Id*. Additional searches against the FBI's Universal Index, additional

24  manual name searches, and/or additional file review of a name check request, depending on the

25  length of time a name check request is pending in the processing queue, may occur periodically

26  during the name check process to ensure that stale information is updated. Cannon Declaration ¶

27  16.

28      Once a record is received, the FBI reviews the file for possible derogatory information.

1   Cannon Declaration ¶ 17.  Less than 1 percent of USCIS's requests are identified with a file

2   containing possible derogatory information.  *Id.*  If appropriate, the FBI forwards a summary of the

3   derogatory information to USCIS.  *Id.*

4       At each stage of the processing, the Name Check Program generally follows a first-in, first-

5   served protocol.  Cannon Declaration ¶ 18.  This protocol reflects that all applicants are equally

6   deserving and ensures that all applicants are treated fairly.  *Id.*  However, if an applicant's name

7   check requires a review of numerous FBI records and files, even though that person came in first,

8   the name check may require additional time until all responsive records are located and reviewed.

9   *Id.*  The general exception to the first-in, first-served policy exists when USCIS directs that a name

10  check be handled on an "expedited" basis.  Cannon Declaration ¶ 19.  USICS determines which

11  name checks are to be expedited based on criteria it determines.  *Id.*  Once designated as an

12  "expedite," that name check proceeds to the front of the queue along with other prioritized name

13  check requests, in front of the others waiting to be processed.  *Id.*

14      Prior to September 11, 2001, the FBI processed approximately 2.5 million name checks per

15  year.  Cannon Declaration ¶ 21.  As a result of the FBI's post-9/11 counterterrorism efforts, the

16  number of name checks has grown.  *Id.*  For fiscal year 2006, the FBI processed in excess of 3.4

17  million name checks.  *Id.*

18      In November of 2002, heightened national security concerns prompted a review of the former

19  INS's procedures for investigating the backgrounds of individuals seeking immigration benefits.

20  Cannon Declaration ¶ 23.  It was determined that deeper, more detailed clearance procedures were

21  required to protect the people and the interests of the United States effectively.  *Id.*  One of the

22  procedures identified was the FBI's name check clearance.  *Id.*  In December of 2002, and January

23  of 2003, the former INS resubmitted 2.7 million name check requests for background

24  investigations of all individuals with then-pending applications for immigration benefits for which

25  the Immigration and Nationality Act required background investigations.  Cannon Declaration ¶

26  24.  Those 2.7 millions requests were in addition to the regular submissions by the former INS.  *Id.*

27  Currently, the FBI has returned an initial response to all 2.7 million resubmitted requests.  *Id.*

28  Moreover, although many of the FBI's initial responses to those resubmitted requests indicated

MOTION TO DISMISS
C08-0207 JSW                          5

1  that the FBI had no information relating to the specific individual who was the subject of the

2  request, approximately 16 percent – or over 440,000 — resubmitted requests indicated that the FBI

3  may have information relating to the subject of the inquiry.  *Id.*

4  The FBI's processing of those 440,000 resubmissions has delayed the processing of regular

5  submissions from USCIS.  Cannon Declaration ¶ 25.  A dedicated team with the FBI's National

6  Name Check Program has been assigned to handle only the re-submitted submissions from USCIS.

7  *Id*.  To the extent the team members are working on only these applications, they are unavailable

8  to process the normal submissions which are completed on a first-in, first-out basis, unless

9  otherwise directed by USCIS.  *Id.*

10  There are numerous factors that contribute to delays in the processing of name checks.  Cannon

11  Declaration ¶ 26.  One is the volume of incoming name checks – the total volume of name check

12  requests currently outpaces the FBI name check program's available resources to process the

13  incoming volume, in addition to being able to process those name checks currently pending.  *Id.*

14  As it concerns submissions by USCIS, the fiscal year 2006, USCIS submitted approximately

15  1,633,000 name check requests, of which approximately 718,000 represented naturalization-

16  related name checks and approximately 658,000 represented adjustment of status-related name

17  checks.  *Id*.  As of the end of fiscal year 2006, the Name Check Program had over 364,600 pending

18  USCIS name check requests, of which over 157,300 represented naturalization-related name

19  checks and over 157,800 represented adjustment of status-related name checks.  *Id.*

20  Second, the number of "hits" on a name when it is reviewed may further contribute to a delay

21  in processing a name check request.  Cannon Declaration ¶ 27.  A "hit" is a possible match with a

22  name in an FBI record.  *Id*.  The number of times the name appears in an FBI record correlates to

23  the number of records which require review.  *Id.*

24  Third, the processing of common names also contributes to a delay in processing a name check

25  request.  Cannon Declaration ¶ 28.  The names associated with a name check request are searched

26  in a multitude of combinations, switching the order of first, last, and middle names, as well as

27  combinations with just the first and last, first and middle, and so on.  *Id*.  Without detailed

28  information in both the file and agency submissions, it is difficult to determine whether or not a

MOTION TO DISMISS
C08-0207 JSW                                   6

1  person with a common name is the same person mentioned in FBI records. *Id.* Common names

2  can often have more than 200 FBI records. *Id.*

3      Fourth, the accessibility of the FBI record needed for review also contributes to a delay in

4  processing a name check request. Cannon Declaration ¶ 29. If the date of the record is later than

5  October 1995, the record text may be available electronically; if the record predates October 1995,

6  the paper record has to be located, pulled, and reviewed. *Id.* A record could be at one of year 265

7  possible locations across the country. *Id.* Requests often involve coordinating the retrieval and

8  review of files from the various 56 different FBI field offices. *Id.* One person's name check may

9  involve locating and reviewing numerous files, all at different physical locations. *Id.* Since is a

10  paper-based process, it is a process subject to misplaced or misfiled files. *Id.* The process is time

11  consuming and labor intensive. *Id.*

12      Fifth, processing a request to expedite the processing of an FBI name check means that an

13  employee is not available to work on a normal name check request. Cannon Declaration ¶ 30.[2]

14                           **IV.    ANALYSIS**

15  A. <u>DEFENDANT MUELLER SHOULD BE DISMISSED</u>

16      Courts in this District have recognized that since March 1, 2003, the Department of Homeland

17  Security has been the agency responsible for implementing the immigration laws of the United

18  States.[3] <u>See</u> 6 U.S.C. §§ 271(b)(5), 557; <u>Alibeik v. Chertoff</u>, No. C 07-1938 EDL, 2007 WL

19  4105527, at *3 (N.D. Cal. Nov. 16, 2007); <u>Clayton v. Chertoff, et al.</u>, No. 07-cv-02781-CW, slip.

20  op., at 4-7 (N.D. Cal. Oct. 1, 2007); <u>Konchitsky v. Chertoff</u>, No. C-07-00294 RMW, 2007 WL

21  2070325, at *6-7 (N.D. Cal. July 13, 2007). Moreover, the FBI's name check process involves

22  discretionary actions. <u>Yan v. Mueller</u>, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May

23

24      [2]The steps the FBI is taking to improve the efficiency of its name check processes are set

25  forth in the Cannon declaration at ¶¶ 31-38.

26      [3]Defendants acknowledge a decision in this District to the contrary, but respectfully

27  submit that this  minority decision is in error because that decision did not consider the
investigatory and discretionary nature of the name check. <u>See Moretazpour v. Chertoff</u>, No. 07-

28  4264 BZ, 2007 WL 428763 (N.D. Cal. Dec. 5, 2007).

MOTION TO DISMISS
C08-0207 JSW                    7

24, 2007) ("The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's <u>exercise of discretion</u> in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks."(emphasis added)).  Finally, if any duty is owed by FBI, it is owed to USCIS, not Plaintiff. See <u>Eldeeb v. Chertoff</u>, No. 07-cv-236-T-17EAJ, 2007 WL 2209231, at *21 (M.D. Fla. July 30, 2007) (dismissing the FBI, stating that the duty owed by the FBI is to USCIS, not the plaintiff). Accordingly, Defendant Mueller should be dismissed from this action.

B.  <u>RELIEF IS UNAVAILABLE UNDER THE MANDAMUS STATUTE OR THE APA</u>

Mandamus is reserved for those situations in which the agency has a ministerial, nondiscretionary duty that is so plainly prescribed as to be free from doubt. *See Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003).  A ministerial act is "devoid of the exercise of judgment or discretion." *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987). A duty is ministerial "where the officer can do only one thing." *Work v. United States*, 267 U.S. 175, 177 (1925).  Courts have consistently recognized that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

Similarly, a court has jurisdiction to act under section 706(1) of the APA (authorizing courts to "compel agency action . . . unreasonably delayed") only when "an agency is compelled by law to act within a certain time period," but the agency has failed to comply with that time period.  *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).  As an example, the Supreme Court in *Norton* stated that the Federal Communications Commission's failure to establish regulations within 6 months of the date of the Telecommunications Act of 1996, as required by the Act, "would have supported a judicial decree under the APA requiring the prompt issuance of regulations."  *See id.*  "The principal purpose of the APA limitations we have discussed – and of the traditional limitations upon mandamus from which they are derived – is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."  *Norton*, 542 U.S. at 66.

MOTION TO DISMISS
C08-0207 JSW                    8

1    Here, the plaintiff cannot demonstrate the existence of a ministerial, non-discretionary duty or

2    that the FBI or USCIS is compelled by law to act on her naturalization application within a

3    specific period of time.  In fact, Congress has expressly forbidden action on the plaintiff's

4    naturalization application until USCIS receives the full results of her background check.

5    Appropriations Act of 1998, Pub. L. 105-119, 111 Stat. 2440, 2448-49.  Moreover, 8 C.F.R. §

6    335.2(b) provides that USCIS "will notify applicants for naturalization to appear before a Service

7    officers for initial examination on the naturalization application only after the Service has received

8    a definitive response from the Federal Bureau of Investigation that a full criminal background

9    check of an applicant has been completed."  (Emphasis added).  Furthermore, USCIS has exercised

10   its discretion in determining which name checks merit expedited service.  Rangaswamy

11   Declaration at Attachment B.  Finally, requiring USCIS to request an expedite of the plaintiff's

12   name check would violate the congressional directive against expending additional funds on

13   adjudication.  1998 Appropriations Act, Pub. L. 105-119, 111 Stat. 2440, 2448-49; Rangaswamy

14   Declaration ¶ 14 (explaining that USCIS must pay an additional fee for each expedite request).

15   Accordingly, Plaintiff cannot establish the existence of a nondiscretionary duty to request an

16   expedite of her name check or interview the plaintiff in the absence of a completed background

17   check.  Accordingly, the Court lacks subject matter jurisdiction.[4]

18    C. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF
         CAN BE GRANTED

19

20    Plaintiff cannot demonstrate that USCIS has failed to take a legally required action.   Rather,
      Defendants are following a congressional mandate.

21

22    As set forth above, in 1997, Congress directed the legacy Immigration and Naturalization

23   Service ("INS") to withhold adjudication of naturalization applications until all necessary

24   background checks are complete. Appropriations Act of 1998, Pub. L. 105-119, 111 Stat. 2440,

25   2448-49.  Accordingly, in 1998, the legacy INS amended 8 C.F.R. § 335.2 to require that  USCIS

26   await the completion of the background checks before conducting the initial interview of an

27

28        [4]The Declaratory Judgment Act does not provide an independent basis for jurisdiction;
      rather, it only expands the range of remedies available in federal courts.  See Skelley Oil Co. v.
      Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).

applicant:

> (b) Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:
>
>> (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;
>>
>> (2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or
>>
>> (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD–258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

8 C.F.R. § 335.2(b), as amended by 63 F.R. 12987, 12988 (Mar. 17, 1998); see Stepchuck v. Gonzales, No. CV 06-570, 2007 WL 184013, at *2, (W.D. Wash. Jan. 18, 2007) (finding the list in 8 C.F.R. § 335.2(b) to be non-exclusive, and that an FBI name check may be considered part of the background check requirement).

Here, Plaintiff seeks relief in the form of an order compelling Defendants to fully adjudicate her application for naturalization.  The "only agency action that can be compelled under the APA is action legally required."  Norton, 542 U.S. at 63.  USCIS is prohibited from adjudicating plaintiff's application, including scheduling an interview, until it has received the results of the name check.  See 1998 Appropriations Act, Pub. L. 105-119, 111 Stat. 2440, 2448-49.  Accordingly, Plaintiff cannot establish that the properly named Defendants have unlawfully withheld or unreasonably delayed action on her application.  5 U.S.C. § 706(1).

Because Plaintiff is unable to demonstrate that USCIS has unlawfully withheld or unreasonably delayed action on her application, her Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to dismiss the Complaint.

MOTION TO DISMISS
C08-0207 JSW                           10

1

2   DATED: March 14, 2008                    Respectfully submitted,

3
                                             JOSEPH P. RUSSONIELLO
4                                            United States Attorney

5
                                                    /s/
6                                            EDWARD A. OLSEN
                                             Assistant United States Attorney
7                                            Attorneys for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
C08-0207 JSW                    11